After filing the reply brief, the court graced us with the decision in Keener, and Keener deals with what constitutes a partnership item, which was the basis for the lower court's opinion that we were foreclosed from, or that there was no jurisdiction to the case, because what we were dealing with in the Bassing situation were partnership items. Well, I've read closely the Keener decision, and I don't think that it dictates the affirmance of the Court of Federal Claims' decision. As a matter of fact, I think the analysis is actually supportive of the position that what we have in Bassing's case are items that are more appropriately determined at the partner level rather than at the partnership level. Could I ask you a question that goes really to the point made at the very end of your brief, but it at least seemed to me to be pertinent to this whole inquiry, and that has to do with the question of what happens with the basis if you treat the $880,000 as a long-term capital gain, which was the initial treatment. You argue in your brief that if treated in that manner, it results in an increase in basis for Mr. Bassing, and I wasn't able to discern from this. It didn't make sense to me, to put it bluntly. Okay. It's a somewhat complex argument that I'm making. I'm saying that the $880,000— The statutes that you cited for that proposition in your complaint don't seem to me to establish that proposition. Normally, you get a step-up in basis set inside death. When you contribute to the enterprise, those are your basis, so you don't end up having to pay taxes on anything other than your property. I don't see an increase in basis in this case. Okay. The position is that Mr. Bassing obtains basis as a result of his deficit restoration obligation being treated on the date of liquidation as an indebtedness that was owed to the partnership. In effect, he, for a brief instant in time, owed a note to the Bonnefitt Partnership, which was in the amount of $882,871, and this note, a personal note— There is case law out there in the corporate area, Karachi, to the effect that a transfer of a personal note to a corporation, the note has basis. Sure, sure. If I were to give a personal note to a partnership that I'm putting myself on the line for all that extra money, sure, that's effectively a contribution of cash because they can come back after me, but that's not the reality of what happened in this case. He wasn't ever on the line for an additional $800,000. He got out of the $800,000 obligation. How is there any analogy there? But at the time that it was forgiven, if you look at the 704B regulations carefully, he could have given a note to satisfy his deficit restoration obligation. But he didn't. But he didn't. He was discharged from it on the date of liquidation. Right. So who ended up better off? If he'd given a note, he would not be better off. But he did recognize debt cancellation income. There was a tax consequence. Right, which is it's either income or it's income one way or another. It's either COD or it's capital gains, right? It has to be one of the two. I'm not saying that he wasn't released from $882,871 of partnership liabilities, that that wasn't a deemed cash contribution. But what I am saying is that that was also represented indebtedness. He could have given a note. As you say, he did not give a note. But based upon the fact that the release and identification agreement discharged him from that debt, that he obtained a basis as a result of that. Again, going to the Perotti and Lessinger decisions. Well, he obtained a benefit, certainly, as a result of that release. But when you say he obtained a basis, he certainly didn't obtain a basis in the sense of making any contribution to the partnership. Well, actually, I believe that he did. As a matter of fact, the government's argument, I think, supports the fact that Mr. Bassing obtained an $882,000 basis. The reason for that is that it seems to me that the government's principal argument that we're dealing with partnership items here is that the partnership sustained a loss. It never says what the amount of the loss is, but it would happen to be $882,000. The government is saying that as a result of the partnership sustaining that $882,000 loss, that that's a partnership item that should be allocated among the partners, conceivably even to Mr. Bassing. And as a result of that, we're dealing with partnership items. So therefore, again, Mr. Bassing is foreclosed from presenting his case to the Court of Federal Claims. But in order for the partnership to have had an $882,000 basis, that means that Mr. Bassing must have contributed something to the partnership that had $882,000 of basis. Otherwise, there would have been no loss that had been sustained by the bottom of the partnership. His capital contribution was about $200, I think. It was less than $1,000 because the total capital contribution was $1,000. Actually, none of the partners really contributed anything. Okay. I'll accept that answer. In any case, it wasn't $800,000. But here it seems to me that there was a deemed contribution by virtue of the fact that he became indebted. In fact, it represented an additional purchase price that was paid by Mr. Bassing for the partnership item. It was fortuitously canceled as a result of the indemnification agreement. But nevertheless, it's our contention that that created basis in that amount, which then offsets the $882,000 of the deemed cash that was distributed under those code provisions that I cited. The code provisions being 731 and 752? 731 and 752. The partnership never made a determination on this, though? That's correct. Does that mean that if he had filed his taxes 10-odd years ago and had filed them the way that you now want to change them, that that would have been accepted? There would have been no problem with them? Well, we might be arguing about it substantively with the Internal Revenue Service. But, again, I think that the positions do have a basis, perhaps. Didn't the partnership have to make? I mean, how did the partnership report this on its taxes? I mean, didn't it have to? I mean, this is kind of why I'm baffled. I don't necessarily understand all of this tax law, but it seems to me that if he is reporting it in any which way, wouldn't the partnership have had to have reported it on their K-1 as well? And how did they treat it? Did they just not report it? I mean, is that appropriate? It's difficult to determine. What about Mr. Cohen? Did he report it on his personal income tax that he filed? He probably did. There's no reporting on the partnership return that was filed for 1991 that allocates any kind of loss or bad debt deduction to Mr. Cohen. However, if you go to the 1972 revenue one that I cite, he would have the basis for claiming that he incurred or he sustained an $882,000 bad debt deduction because that was what Mr. Bassan owed to the partnership at the time of the liquidation. But the partnership didn't put this on its return. So does that mean they're – I guess I'm wondering who ought to be held – the fact that it wasn't done because now the time's expired so they can't actually bring a partnership level proceeding. That's correct. And so who's really at fault here for the inconsistent reporting? To the extent that the partnership could have claimed a loss or a bad debt deduction from the $882,000 deemed contribution, which the government says that was sustained by the partnership, it was the partnership's fault for not reporting that. Now, I do think that Mr. Cohen probably was able to declare a bad debt deduction, again, based upon this 1972 revenue ruling. Can a partner like Bassan – I mean, this is a partnership with two people, right? So this is – it's not like a partnership with 1,000 people. What would happen – I mean, in this circumstance, suppose we could rewind to the relevant time period and that you swooped in the year after he filed the return and when there was still time to do all of this, what would Mr. Bassan have done under those circumstances? If we were in this ideal world where it was just one year after he had filed and you could have helped advise him, what would you have told them to do? Reopen a partnership level proceeding, declare it, change the K-1, all that? Is that the way in an ideal world this would have gotten done? I still probably would have advised Mr. Bassan that this was an item more appropriately determined at his level and advised him to file a claim for a refund. If I had been involved in structuring Mr. Bassan's exit, I would have done things a little bit differently. But in terms of coming – if he had come to me a year later, I would have said that this is really an item that's based upon my theory that Mr. Bassan acquired a basis in the partnership interest as a result of realizing the substantial debt cancellation income. I would have said this is an item that's more appropriately determined at your level. We don't really need to inquire as to how the partnership treated this debt forgiveness. What do you mean you don't really need to inquire? Suppose the partnership had in fact treated it and suppose they treated it the same way that Bassan had now. The way that Bassan had, not the way he wishes he had, but the way he in fact did. You'd have a much harder road, wouldn't you, if you were then trying to change your treatment because it would be inconsistent with the way the partnership had treated it. Are you saying that the partnership was reporting loss of – Suppose they actually made a determination and the determination was consistent with the way Bassan actually treated it in 1999. Ninety-one. Ninety-one, sorry. Nineteen ninety-one. And so if they had made a determination, would you be under those circumstances able to come into court and continue to make this argument today, which is Mr. Bassan would like to treat it and treat it as debt so it wipes away given his insolvency? I certainly understand his incentive to do this, but I'm just wondering if there had been a partnership level determination made. Would you be able to make this argument? Actually, I find the government's decision to be quite novel, so I would be very surprised if the partnership had made any kind of determination that it could sustain a loss as a result of Mr. Bassan's being released from his deficit restoration obligation. Wait, really? Because that part sort of baffles me. The partnership, I mean, it has certain capital assets, in this case a building, and Mr. Bassan was under an obligation for whatever reason to come up with $800-some-thousand, and the partnership agrees to release him from that. I'm kind of baffled why the partnership didn't actually declare that somehow on their taxes. It's really Mr. Cohen who sustained a loss. Well, no, it's the partnership, but Mr. Cohen happens to be the only remaining partner once Mr. Bassan is out. But Mr. Cohen was also the only partner who was funding partnership expenses during the term of the partnership agreement. Mr. Cohen was required to continue funding the partnership, and its day-to-day operating expenses, until such time as the building had been completed and lease-up had been completed of the building. Lease-up had never been completed by the time the partnership went defunct. So Mr. Bassan advanced all sums in excess of $5 million, I'd say, that was borrowed from First American Bank of Maryland. So it was Cohen, in his capacity as the lender, creditor to the partnership, who sustained a loss. And if you had been advising the partnership and Mr. Cohen, I take it you would have advised the partnership to represent that release as a cancellation of debt, which then passes through to Mr. Cohen. If there was some way of reporting that to Mr. Bassan, I guess that's what I would have advised the partnership to do. And you think that's the correct tax treatment of that item? I mean, you clearly do. Absolutely. With respect to Mr. Bassan, but you would have regarded that as the consistent way for the partnership to have treated that. Yes, because on the partnership's liquidation date, that February 1st, 1991 date, Bassan was obligated, under the Deficit Restoration Obligation, as required by the Treasury regulations for Deficit Restoration Obligations, to contribute either money or a note. He was released from that obligation, so therefore it seems to me that it was the cancellation of the Deficit Restoration Obligation that represented debt at that time. And so it was a cancellation of debt income to Mr. Bassan. Okay. And the way that you would then deal, since the cancellation of debt leaves him, in terms of his tax situation, still as a partner, the way you would deal with whatever the transaction is that has him exiting the partnership at the time of liquidation, you would treat, how would you then treat that, assuming you've treated the release as a cancellation of debt? To treat the partnership's... The liquidation vis-à-vis Mr. Bassan's tax situation. In other words, there are two events. One is the release, and the other is the liquidation, which results in his no longer being a partner in the partnership. How do you treat the second of those two in advising the partnership and Mr. Cohen? Well, I would advise Mr. Cohen that he had a bad debt deduction. Right. Okay. So we've dealt with Mr. Cohen. Now, how do you treat the exit of Mr. Bassan, for tax purposes, from the partnership? For tax purposes, it's really up to Mr. Bassan to determine whether he has any additional consequences from the liquidation and his exit from the partnership  But I would have advised him to look at the liabilities that had been booked on his return going into the year, which you could pick up from his 1990 K-1, which were about $1,500,000. I would then advise Mr. Bassan that that $1,500,000 was released pursuant to the release and liquidation agreement. So therefore, you had a deemed distribution of $1,500,000. So that would be long-term capital gain? That would be a deemed distribution. Then you compare that to the basis that Mr. Bassan had in his partnership interest. And there, I would say that Mr. Bassan had an initial basis roughly equal to the difference between $880,000 and $1,500,000, plus, as a result of his deficit restoration obligation being canceled, that he had an additional $880,000. So you end up with a wash on that side of the transaction. Exactly. Okay. I see that I— Well, we've peppered you with questions, so we'll— No, no, I'm glad to. I'd much prefer to respond to your questions than to just recite them. That's fine. That's what's most helpful for us as well. However, because we've exhausted all of your time, we will give you back your rebuttal time. Okay. Ms. Bartow? May I please report? Mr. Bassan seeks to change the characterization of his release of his partnership obligation from a sale of a partnership interest to cancellation of indebtedness income. We believe that, as this Court recognized in Keener, the characterization of a partnership item, and Mr. Bassan recognizes that the sum involved is a partnership item, is also a partnership item, and that a claim respecting that characterization is a claim attributable to a partnership item which may not be brought in a partner's individual refund action under Section 7422H. Can I ask you the same question I began with Mr. Dewar? Can you explain to me what the role of the basis is in the transaction involving the putative sale of Mr. Bassan's interest in the partnership? You understand the issue I'm addressing. It's the one at the very end of the… Very generally. I would just mention that this was something that the District, the Court of Federal Claims did not get into because it held that it was barred from getting into it. I understand, but I'd like the Tax Division's view as to whether Sections 731 and 752 do indeed, as Mr. Dewar says, result in an increase in basis. We did not do a thorough analysis of that. Looking at that, I was somewhat dubious, but I would have to say that we have not done a full analysis of that issue here. Okay. You don't think that's important? No, no, Your Honor. We think it's quite beside the point because this was a matter that could not be reopened at this point. It was a partnership matter. The whole characterization of the transaction is a partnership item that could not be gotten into in an individual partner's refund action. It was jurisdictionally barred. If we were back in 1991, what would you think the correct tax treatment of this set of transactions would have been? The government tends to believe, although as they say this was not something that was developed in the court below, we tend to believe that it was correctly done at the time. A sale? As a sale. Right. And do you think a sale with $880,000 worth of gain? Presumably so, Your Honor. Right. So that takes care of the basis. Your answer then is to the basis is you don't think there's a step-up in basis? Probably not, Your Honor. Okay. But getting back to Keener, which I believe governs this case, the character of the income that Bassing received from the release of his deficit restoration income is a partnership item that simply cannot be challenged here. Section 6231 defines a partnership item as any item required to be taken into account for the partnership's taxable year. As you noted, the partnership apparently failed to take it into account, but it was nonetheless obliged to take it into account. Suppose the partnership had taken it into account, made a determination, and treated it as debt? If it had, then if the IRS had wished to challenge that, it would have done so at the partnership level by issuing the proper administrative challenge to that matter. So the fact that the partnership didn't include the information, thereby it wasn't treated as anything for the purposes of the partnership, I'm just struggling with why that leaves Mr. Bassing out on a limb. I mean, almost any treatment he gives it is presumably wrong then. Isn't that right? Because the partnership didn't treat it, so the IRS didn't have a chance to challenge it at the partnership level. So presumably any treatment he gives it at all is wrong. The IRS had the opportunity to challenge it when Mr. Bassing submitted his original returns timely, and the time for challenging that for the IRS has passed. But you just said it's only really something properly challenged at the partnership level, and so you wouldn't, would the IRS then have challenged Mr. Bassing at the partner level with regard to his treatment of it when it wasn't disclosed? It would have had to have opened it at the partnership level at that point, seeing that there was an inconsistency between the treatment by the partnership, that is no treatment at all, and Mr. Bassing's treatment, whichever it was. The IRS could at that point have opened the matter at the partnership level. It could not have simply gone to Mr. Bassing and said, Mr. Bassing, you're wrong here, whichever way he reported it. It would have, because that is an item that would have affected the other partners as well. The fact that this item, this transaction was simply not reported affects the other partners as well. Now, we don't know, I suppose, what Mr. Cohen did with respect to his own personal return for that year, do we? Although I would note that at least formally there were altogether eight partners. Well, I understand. Some of them were Mr. Cohen's limited family partners, and there were other family members involved in that. Two non-Cohen partners. Yes. Certainly there were the two main general partners, as well as all these limited partners. Right. But since Mr. Cohen was the creditor who presumably was carrying all of, whatever benefit would accrue to the partnership, or whatever loss would accrue to the partnership, rather, from the release, would all be felt by Mr. Cohen, I take it? We don't know that. We don't know exactly what the other partners' interests in the matter might have been. Okay, but the short of it is we don't know if Mr. Cohen took a bad debt deduction. No, I'm afraid we don't. He couldn't do it directly, Your Honor. He could do it as to his lending to the partnership, but it is the partnership that is involved in this transaction with Mr. Bassing. Right. And not Mr. Cohen as an individual partner or as a lender. It was the partnership that was involved in this transaction. I understand. And I take it if he had, in order for him to get the benefit of the bad debt, that the partnership, the benefit of a deduction resulting from the release of Mr. Bassing, in order for him to do that, it would have been necessary for the partnership to treat this transaction as bad debt as opposed to capital as opposed to a sale. That is correct, and then it would pass through because, of course, a partnership is a pass-through entity. Then it would have been deductible by Mr. Cohen directly on a pass-through theory. Presumably, yes, presumably. Okay. But not just the amount which Mr. Bassing emits, but also the character of the income he received from the partnership is also a partnership item. This was a release that was created at the partnership level among all the other partners through this document that basically cleared up everyone's relationship with everyone else. So it is an accounting arising out of the partnership under the regulation. As to his argument that this was an affected item, this court recognized in Keener that an affected item, an item that is affected by a partnership item, has two components, one of which is the partnership component, and the other of which is that which is related strictly to the partner. The character of the transaction is part of the partnership. It's not something that is only related to what's going on with Mr. Bassing. It is necessarily treated, therefore, at the partnership level, as the court stated in Keener, rather than at the partner level. Mr. Bassing's remedy, if he had wished to re-characterize the income he received from the release, would have been a request for administrative adjustment at the partnership level, and the time for that, unfortunately, for Mr. Bassing is past. I'm just curious, and it's not raised by the parties, but what is it that kept this 1991 year open for all these years? What was it that resulted in this still being available to Mr. Bassing on his own return? Well, if it had not been precluded by the jurisdictional bar at issue here, what happened is that he didn't pay his taxes. He owed originally around $60,000 as a result of the sale of his interest, which he didn't pay in 1991, didn't pay, in fact, until after 2000. Having paid it at that point, he had another few years after the date of the payment, even though it was ancient history as far as the obligation was concerned. Under 7422, he had another couple of years after he paid it to bring a refund suit. So I can file, as long as I don't pay my taxes, I can amend my return for 1962? If I didn't pay my taxes in 1962? You could certainly try it and then bring a refund suit. And you wouldn't have a statute of limitations argument to make? Not if you hadn't paid it, depending upon the circumstances, but generally speaking, yes. In fact, all of this would not have arisen at all in this manner had he timely paid his taxes. If the Court has no further questions? Thank you. Well, to the point about Mr. Bassing not paying his taxes, he couldn't afford to pay his taxes. He was pretty much hopelessly insolvent at that point. He was underwater on his home. I think he might have had an IRA account that the IRS levied upon and seized the assets. He had a tax refund to the minimum amounts that were held back from him, but he just didn't have the cash or other assets. Well, that's fine. I just was curious about the unusual extension of the normal statute of limitations, but the explanations make sense. Ordinarily, let's say that Mr. Bassing had been a corporate employee and had borrowed money from the corporation to buy stock from the corporation. The corporation goes defunct. He also can't pay the money back that he borrowed from the corporation. His accountants erroneously treat that release as compensation income to him. He can't pay the tax due on that compensation income. Ten years later, he finds the funds to pay the tax. He pays it. There, Bassing would have perfect entitlement to seek a refund because there he would be challenging, in fact, the terms of his employment agreement, which allowed him to borrow funds from the corporation for which he was personally liable to buy stock. It could be characterized. There, I think, there might be an issue as to whether it's more properly treated as debt cancellation income or as compensation income, but he would have had every right to have brought that action to challenge that. Here, Mr. Bassing is not being given the opportunity to challenge what is, in fact, no determination or characterization that was made as to him as to the consequences of these transactions. The K-1s that he was issued for his general and limited partnership interest told him, consult your tax advisor as to the consequences of your ending capital account balances. To my mind, that's clearly an indication that this Bonofin partnership certainly didn't think that it was responsible for reporting any consequences to Mr. Bassing as to the result of that negative capital account existing when he was liquidated. They certainly didn't focus upon his deficit restoration obligation that was canceled or do any reporting, nor was there anything that I could find in 1991 returns that would have indicated that the partnership should have reported debt cancellation income to Mr. Bassing, nor do I think that there was any 1099 requirement that the partnership should have issued Mr. Bassing a form reporting debt cancellation income. I believe there was 1099 reporting for banks, but for partnerships, there was none. Going back to this characterization issue, it seems to me that the characterization that I'm endeavoring to do here on Mr. Bassing's behalf is, one, to ascertain that he had a deficit restoration obligation. He was released from the deficit restoration obligation, again, only affecting him. None of the other partners as to partnership debts or liabilities was released as a result of signing this release agreement. And then three, having determined that he had a deficit restoration obligation, he was released from it looking at the applicable partnership regulations and applicable case law. That deficit restoration obligation represented debt. He, therefore, realized debt cancellation income, a characterization that is more appropriately done at his level. I don't see why the partnership needs to be involved in any fashion in this characterization. It's more appropriately. It just affects Mr. Bassing. It doesn't affect, insofar as, the debt cancellation income that's being realized by Mr. Bassing, any other partner of the partnership. Let's assume for the moment that he characterizes the release as creating, as he did originally, as creating income for him, which he then characterizes as long-term capital gains. Assuming for the moment that that is correct, the correct characterization, what would be the consequences of that characterization for the partnership and for Mr. Cohen? There's no consequences. Mr. Bassing was simply being released from his share of liabilities. So what does Mr. Cohen put down? Assuming the partnership, whatever the partnership would write down on that issue, what does Mr. Cohen put on his return and what is the tax consequence to him? Mr. Cohen, one, would have either reported a bad debt deduction because he was the creditor who had loaned the funds that Bassing was responsible for. Even if Bassing treated it as a long-term capital gain? Even as a long-term capital gain? It would be that the IRS could consistently view the treatment by Mr. Cohen of that same transaction as a bad debt and on the other hand side of the transaction as a gain. That's what the government could contend. Well, I mean, do you think that's right? Is that the right way for that transaction to be treated? Assuming that Mr. Bassing was correct in treating it as a long-term capital gain? Well, Mr. Bassing was correct in reporting a deemed distribution of 1,500,000 liabilities, which included the $882,000 of deficit restoration that he was discharged from. We're saying that, as you put it before, it washed out because under the position that we're taking, Mr. Bassing should have increased the basis of his partnership interest by that canceled debt because for a moment in time he was unconditionally and legally obligated to pay the partnership. I understand that's your argument now. What I'm trying to get at is really to try to see if the treatment that Mr. Bassing gave to the transaction dictates the way Mr. Cohen is obliged to treat the transaction. Let me add to my hypothetical that not only do we say that the treatment, whether it's correct or not ultimately, the treatment that's binding on Mr. Cohen is the treatment that, let's say hypothetically, that Mr. Bassing gives it, which is the treatment as a capital gain. Now, if you were Mr. Cohen's lawyer and Mr. Cohen comes and says, I'm stuck with Bassing's having called this a capital gain, what are my options? Can he then still deduct it as a bad debt or is he confined in his choices? He can still deduct it as a bad debt, again, relying on that 1972 Internal Revenue Service Revenue Ruling, which basically goes to the point that a partner who pays the debts owed by another partner can claim a bad debt deduction for the payment of those debts. Okay. Thank you. Very well. The case is submitted.